JUSTICE RICE
specially concurring.
¶46 I concur with the Court’s holding and rationale, and therefore have signed the opinion. I write separately to offer comment regarding Issue 5, which asserts that the District Court was biased.
¶47 In resolving the child custody issue, the District Court reasoned as follows:
Under the guise of protecting their children from drugs and immorality, the Eppersons home schooled their children, essentially denying them access to the outside world. They have no television, and until recently, had no telephone.... Robert’s willingness to send the children to a public school at least opens up the possibility that the children will receive an adequate education and be exposed to ideas that are not first sifted through their parents’ view of reality.
This statement, taken at face value, can easily be construed as a judicial assault upon the rights of parents to educate their children *153 and to convey their morals and values to their children. It ridicules parental effort to protect children from drugs and immorality if such effort involves home-schooling and denial of access to worldly influences, faults a parental decision to have no television, faults the parents’ choice of home-schooling over public education and criticizes parental efforts to transmit their “view of reality” to their children. If these things constitute impermissible parenting, then I submit that we have left freedom behind and are within the grip of the totalitarian state.
¶48 The District Court attempted to mitigate these comments, at least about home- schooling, by stating that “the Court wishes to make clear that it does not automatically assume that every home schooling situation is necessarily inferior to every public education situation.” (Emphasis added.) However, this condition-laden explanation is less than convincing, and does not restore faith in the District Court’s impartiality. Worse, the District Court made no effort at all to mitigate its comments criticizing the transmission of the parents’ views and values to their children.[1]
¶49 Further, the District Court made comments during the course of the trial about the parties’ religion. During its own active examination of the witnesses, it formulated a question that described the parties as “a family of isolated religious fundamentalists.” This description may very well have been accurate, but the court’s later statements that the parties’ religion had “screwball aspects” and was “offbeat” would infer that it viewed fundamentalism in a negative light[2].
¶50 In my view, these are inappropriate judicial comments. I would vote to reverse if I believed that the District Court’s views on these matters led it to make an erroneous decision. However, upon review of this complex family matter, I believe the District Court’s holding was supported by its consideration of evidence unrelated to the rights of this family to home-school, to insulate children from worldly influences, to convey moral values, and to worship as it pleased.

 It should be noted that the record reflects the children were well adjusted to their environment and well educated, if not exposed to all the wonders of the world.

 Fundamentalism, as primarily defined, isa movement within twentieth century Protestantism which emphasizes a literal interpretation of the Bible as fundamental to Christian life and teaching. See Merriam-Webster’s Collegiate Dictionary, Tenth Edition, 1998. In contrast, the record discloses that the Epperson family adhered to the Tridentine Catholic order or Tridentine Mass. A broader definition of fundamentalism is “strict and literal adherence of a set of basic principles.” Ibid.